# EXHIBIT T

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL COUNCIL OF
NONPROFITS, et al.,

*Plaintiffs,*

v.

OFFICE OF MANAGEMENT AND
BUDGET, et al.,

*Defendants.*

Case No. 25-cv-239

**FIRST SUPPLEMENTAL DECLARATION OF ▮▮▮▮ TO DECLARATION OF ▮▮▮▮**

I, ▮▮▮▮, declare as follows:

1. I am a Co-Executive Director of ▮▮▮▮, a tribal organization with 34 active members consisting of federally recognized tribes in ▮▮▮▮.

2. I submit this declaration as a supplement to the prior declaration of my Co-Executive Director, ▮▮▮▮, in this case, which was filed as Exhibit E to Plaintiffs' reply in support of their motion for a temporary restraining order.

3. In that previous declaration, Ms. ▮▮▮▮ described a CTFC member tribe that was unable to draw down its funds from a DOJ Office on Violence Against Women grant and a Housing and Urban Development grant on Tuesday, January 28, resulting in immediate layoffs, with more likely imminent.

4. I have so far been unable to determine whether this Tribe was able to receive these funds.

1

5. Ms. ▆▆▆▆ also previously described a member tribe that had requested money from multiple federal grants before and after the stay was issued on Tuesday, January 28, but did not receive deposits into their accounts as expected—which would lead to the tribe having to stop providing addiction services to their members.

6. I have so far been unable to determine whether this Tribe was able to receive these funds.

7. Ms. ▆▆▆▆ further previously described a member tribe that was able to draw down some funding on Thursday, January 30, but knew that if the rest of their funding did not come through by Friday, February 7, the tribe would need to declare a state of emergency and shut down most of their governmental services.

8. This tribe received the rest of its funds on January 31. The tribe was able to draw down enough funds estimated to continue services for six months. During the period of uncertainty, the tribe had to redirect staff resources from providing direct services to the tribe's membership in order to develop plans to continue services.

9. Finally, Ms. ▆▆▆▆ previously described a member tribe that was able to draw down Tribal Temporary Assistance for Needy Families funding on January 31, but those funds had not been deposited into the tribe's accounts as of Ms. ▆▆▆▆'s previous declaration—and that the tribe would need to begin furloughing employees if those funds were not received by February 10.

10. This tribe did not receive the funding it had drawn down until the afternoon of Friday, February 7, and has experienced continuing delays receiving payments since then. Because of that delay and the uncertainty created, on Thursday, February 6, the tribe had to make a decision to cut back the program and halt filling critical positions in order to ensure direct payments to beneficiaries in the event that the funding gets discontinued again.

11. If the freeze goes back into effect, these tribes will suffer the same consequences that they faced the first time—a loss of services to their community, the closure of programs, and employee layoffs or furloughs. Our member tribes are very concerned about this happening if the temporary restraining order is lifted. Some tribes have already responded to the uncertainty created by halting all new hiring.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 11, 2025.



, Co-Executive Director