# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| National Council of Nonprofits, *et al.*, <br><br>             *Plaintiffs*, <br><br>     v. <br><br> Office of Management and Budget, *et al.*, <br><br>             *Defendants*. | Civil Action No. 1:25-cv-239 (LLA) |

## AMERICAN CENTER FOR LAW AND JUSTICE'S PROPOSED AMICUS BRIEF IN SUPPORT OF THE DEFENDANTS

Jordan Sekulow
   (D.C. Bar No. 991680)
Donn Parsons*
    (Ohio Bar No. 87305)
Stuart J. Roth
   (D.C. Bar No. 475937)
Andrew J. Ekonomou*
   (GA Bar No. 242750)
Benjamin P. Sisney
   (D.C. Bar No. 1044721)
Nathan J. Moelker
   (VA Bar No. 98313)
Liam R. Harrell*
   (D.C. Bar No. 1740309)
AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Ave., NE
Washington, DC 20002
Phone: (202) 641-9163
Fax: (202) 546-9309
Email: bsisney@aclj.org

*Counsel for Amicus Curiae*

*Not Admitted in this court

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

INTEREST OF AMICUS ........................................................................................................1

ARGUMENT ...........................................................................................................................2

    I.    Plaintiffs Have No Standing to Seek to Enjoin the Enforcement of a Rescinded Memorandum. .........................................................................................2

        A.    The Lawsuit Against the Rescinded OMB Memorandum is Moot .................3

        B.    The OMB Memo was Never a Final Administrative Decision to Challenge in the First Place. ...................................................................................5

CONCLUSION ........................................................................................................................8

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Bd. of Airport Comm'rs v. Jews for Jesus*,
   482 U.S. 569 (1987) ............................................................................................................1

*Bennett v. Spear*,
   520 U.S. 154 (1997) ............................................................................................................7

*Bush v. Gore*,
   531 U.S. 98 (2000) ..............................................................................................................1

*Campbell-Ewald Co. v. Gomez*,
   577 U.S. 153 (2016) ............................................................................................................3

*Collins v. Yellen*,
   594 U.S. 220 (2021) ............................................................................................................2

*Fischer v. United States*,
   144 S. Ct. 2176 (2024) ........................................................................................................1

*Franks v. Bowman Transp. Co.*,
   424 U.S. 747 (1976) ............................................................................................................4

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
   561 U.S. 477 (2010) ............................................................................................................2

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ............................................................................................................3

*Lamb's Chapel v. Center Moriches Sch. Dist.*,
   508 U.S. 384 (1993) ............................................................................................................1

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) ............................................................................................................5

*McConnell v. FEC*,
   540 U.S. 93 (2003) ..............................................................................................................1

*McDonnell v. United States*,
   579 U.S. 550 (2016) ............................................................................................................1

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004). ..................................................................................................5

**Statutes**

5 U.S.C. § 704 ...............................................................................................................7

**Other Authorities**

1 Annals of Cong. (1789) ..............................................................................................2

Enforcing the Hyde Amendment, Exec. Order 14182, 90 Fed. Reg. 8751 (Jan. 24,
    2025).................................................................................................................1, 2, 9

Karoline Leavitt (@PressSec), X  (Jan. 29, 2025, 1:40
    PM), https://x.com/PressSec/status/188467287194490103 ......................................5

OMB Mem. M-25-13, *Temporary Pause of Agency Grant, Loan, and Other
    Financial Assistance Programs* (Jan. 27, 2025) ("OMB Memo").........................3, 8

*OMB Q&A Regarding Memorandum M-25-13*,
    https://web.archive.org/web/20250130121622/https://www.whitehouse.gov/fa
    ct-sheets/2025/01/omb-q-a-regarding-memorandum-m-25-13/.................................8

**Other Authorities (continued)**

Reevaluating and Realigning United States Foreign Aid, Exec. Order 14169, 90
    Fed. Reg. 8619 (Jan. 20, 2025)..................................................................................5

Tackling the Climate Crisis at Home and Abroad, Exec. Order. No. 14,008, 86
    Fed. Reg. 7619 (Jan. 27, 2021)..................................................................................9

Termination of Emergency With Respect to the Southern Border of the United
    States and Redirection of Funds Diverted to Border Wall Construction, Procl.
    No. 10,142, 86 Fed. Reg. 7225 (Jan. 20, 2021).........................................................9

The Federalist No. 72 (Alexander Hamilton)..................................................................2

## INTEREST OF AMICUS[1]

The American Center for Law and Justice ("ACLJ") is an organization dedicated to the defense of constitutional liberties and principles secured by law, including separation of powers. ACLJ attorneys have appeared often before the Supreme Court as counsel for parties, *e.g.*, *McConnell v. FEC*, 540 U.S. 93 (2003); *Lamb's Chapel v. Center Moriches Sch. Dist.*, 508 U.S. 384 (1993); *Bd. of Airport Comm'rs v. Jews for Jesus*, 482 U.S. 569 (1987); or as amici, *e.g.*, *Fischer v. United States*, 144 S. Ct. 2176 (2024); *McDonnell v. United States*, 579 U.S. 550 (2016); and *Bush v. Gore*, 531 U.S. 98 (2000).

The ACLJ possesses a fundamental interest in supporting the separation of powers and the constitutionally assigned authority of the executive branch. Furthermore, the ACLJ vigorously supports the sanctity of human life and the congressional provision known as the Hyde Amendment. Accordingly, the ACLJ files this amicus brief in support of the President's January 24, 2025, executive order entitled Enforcing the Hyde Amendment, Exec. Order 14182, 90 Fed. Reg. 8751 (Jan. 24, 2025). This executive order states that while Congress enacts the Hyde Amendment annually, and in so doing, prevents the use of federal funds for abortion. The Biden Administration had disregarded this prohibition and instead "embedd[ed] forced taxpayer funding of elective abortions in a wide variety of Federal programs." *Id.* That order requires the government "to end the forced use of taxpayer dollars to fund or promote elective abortion." *Id.* The enforcement of this executive order is at issue in this litigation. The ACLJ files this brief to support this executive order and President Trump's commitment to end illegal federal funding for abortion, among other examples of wasteful or otherwise improper federal spending. For reasons explained

---

[1] No party's counsel in this case authored this brief in whole or in part. No party or party's counsel contributed any money intended to fund preparing or submitting this brief. No person, other than amicus, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.

below, the Plaintiffs' decision to challenge the OMB Memorandum, OMB Mem. M-25-13, *Temporary Pause of Agency Grant, Loan, and Other Financial Assistance Programs* (Jan. 27, 2025) ("OMB Memo"), instead of any particular agency's implementation of a specific executive order, such as the Restoring the Hyde Amendment order, is fatal to their case.

## ARGUMENT

I.   **Plaintiffs Have No Standing to Seek to Enjoin the Enforcement of a Rescinded Memorandum.**

On the United States Constitution's separation of powers, "[n]o political truth is certainly of greater intrinsic value." The Federalist No. 47 (James Madison). Alexander Hamilton emphasized that "the preparatory plans of finance," and "the application and disbursement of the public moneys in conformity to the general appropriations of the legislature," are executive tasks that "constitute what seems to be most properly understood by the administration of government. The persons, therefore, to whose immediate management these different matters are committed, ought to be considered as the assistants or deputies of the chief magistrate[.]" The Federalist No. 72 (Alexander Hamilton). Congress enacts appropriations, but the President, as the chief of the executive branch, is given the authority and responsibility to administer public funds, to oversee their disbursement, and to ensure that funds are distributed in accordance with law. *See generally Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492 (2010) (quoting 1 Annals of Cong. 463 (1789)) ("As Madison stated on the floor of the First Congress, 'if any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws.'"); *Collins v. Yellen*, 594 U.S. 220, 252 (2021) ("[B]ecause the President, unlike agency officials, is elected, this control is essential to subject Executive Branch actions to a degree of electoral accountability.").

That authority is at stake here. Plaintiffs' suit challenges the enforcement of an OMB

Memorandum, OMB Mem. M-25-13, *Temporary Pause of Agency Grant, Loan, and Other Financial Assistance Programs* (Jan. 27, 2025) ("OMB Memo"), that is now rescinded and no longer in place. To avoid the fact that this rescission will moot their case, Plaintiffs now attempt to extend their case to challenge all federal funding pauses of whatever kind. Such a broad and all-encompassing lawsuit against any funding pause is a naked attack on the Executive's Branch's constitutional authority – and particular executive orders not even identified in their Complaint.

      **A.     The Lawsuit Against the Rescinded OMB Memorandum is Moot.**

This is a case over a rescinded OMB Memo. Every item in the prayer of relief constitutes a challenge to the OMB Memo, seeking to enjoin the enforcement of that Memo's particular terms. *See* ECF No. 1, Compl. at 18-19 (asking the Court to "[d]eclare unlawful and set aside Memo M-25-13 as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[,]" and to issue an order prohibiting OMB "from taking any steps to implement, apply, or enforce Memo M-25-13[,]"). The Prayer for Relief in this case challenges only the OMB Memo; it seeks no desired relief that is not tied specifically to that Memorandum. It does not, for example, seek to enjoin the enforcement of any executive order. Accordingly, *none* of the desired terms of the Prayer for Relief can be implemented; there is no OMB Memo that can be enjoined, restrained, or vacated. Plaintiffs ask the Court to bar OMB from "taking any steps to implement" a memo that does not exist.

The doctrine of mootness originates in Article III. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) ("The Constitution's case-or-controversy limitation on federal judicial authority . . . underpins . . . our mootness jurisprudence."). The Supreme Court has emphasized that "[i]nsofar as the concept of mootness defines constitutionally minimal conditions for the invocation of

federal judicial power, its meaning and scope, as with all concepts of justiciability, must be derived from the fundamental policies informing the 'cases or controversies' limitation imposed by Art[icle] III." *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 754 (1976).

This Court originally noted in its emergency hearing that if "anything that was terminated pursuant to other executive orders I think is fodder for another lawsuit." Tr. of Jan. 28 Hrg. at 29. That distinction is crucial, and the reason why the Plaintiffs' desired relief should fail. This Court's statement reflects a crucial distinction in this matter. In contradistinction from the terms of the OMB Memo, there are executive orders related to federal funding, implementing a variety of federal laws and ordering federal agencies to engage in certain specified pauses. For example, the President's executive order Reevaluating and Realigning United States Foreign Aid, Exec. Order 14169, 90 Fed. Reg. 8619 (Jan. 20, 2025), announces that it is "the policy of United States that no further United States foreign assistance shall be disbursed in a manner that is not fully aligned with the foreign policy of the President of the United States." *Id.* This order orders a 90-day pause in all U.S. foreign development assistance "for assessment of programmatic efficiencies and consistency with United States foreign policy." *Id.* That executive order is *not* the subject of this lawsuit; the Plaintiffs' Complaint's Prayer for Relief does not contain any claim that that executive order should be enjoined. Accordingly, the pause that order implements is not at issue here. The same is true for other executive orders, not directly challenged in this litigation.

It is in that context that the President's Press Secretary stated on X: "[t]he President's EO's on federal funding remain in full force and effect and will be rigorously implemented."[2] This case is not a challenge to the President's executive orders, issued prior to and separate from the OMB Memo. Accordingly, any temporary pause that those orders implement is not in dispute here, and

---

[2] Karoline Leavitt (@PressSec), X (Jan. 29, 2025, 1:40 PM), https://x.com/PressSec/status/1884672871944901034.

Page 4 of 9

those orders continue in full force.

A party cannot challenge policies; it must present a case or controversy. A challenge to the OMB Memo does not thereby challenge every possible funding pause; it challenges only the specific mechanism that was raised in the complaint. If Plaintiffs desired to challenge the lawfulness of particular executive orders, they could have attempted to do so. But they did not; they filed this lawsuit specifically challenging an implementing memorandum that is no longer being implemented. As this Court noted, whatever challenges they may wish to bring against other actions is properly the subject of separate litigation. Plaintiffs cannot use a Complaint directed against the OMB Memo as a basis for obtaining relief against all pauses of whatever basis.

This case, accordingly, is moot for a fundamental reason. Plaintiffs' Complaint challenges only the now-rescinded OMB Memo, not any independent executive orders issued prior to the OMB Memo. Plaintiffs do not have the right or ability to challenge all funding pauses of any kind wherever they may occur; they challenged a specific, now rescinded memorandum.

### B. The OMB Memo was Never a Final Administrative Decision to Challenge in the First Place.

Moreover, even before the OMB Memo was rescinded, it never constituted final administrative action. The Administrative Procedure Act (APA) provides that "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704. A cognizable APA claim, therefore, must challenge a final agency action; it must challenge a "circumscribed, discrete agency action[]" and it cannot advance a "broad programmatic attack" on an agency's operations. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61-62 (2004). The APA does not permit a plaintiff to attack an agency program "consisting of . . . many individual actions" and to seek "wholesale correction" simply by characterizing it as "agency action." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 893 (1990).

The OMB Memo did not direct that any particular funding be paused. Instead, OMB instructed that agencies must determine whether to temporarily pause funding that they determined were implicated by the Executive Orders, as consistent with the law. Despite how it was portrayed, the OMB Memo was not a blanket freeze:

> [t]o implement these orders, each agency must complete a comprehensive analysis of all of their Federal financial assistance programs to identify programs, projects, and activities that *may be implicated by any of the President's executive orders*. In the interim, *to the extent permissible under applicable law*, Federal agencies must temporarily pause all activities related to obligation or disbursement of all Federal financial assistance, and other relevant agency activities *that may be implicated by the executive orders*.

OMB Memo (emphasis added). On its face, the OMB Memo did not pause or delay any specific funding. If a program's pause is not "permissible under applicable law," than pausing that program or activity is no way authorized by the OMB Memo. And, as the original OMB Memo made clear and subsequent OMB guidance reemphasized, "[a]ny program not implicated by the President's Executive Orders is not subject to the pause."[3] OMB did not direct a categorical pause—it directed that agencies pause funding, to the extent permissible by law, if they determined that funding was implicated by specific executive orders. But these plaintiffs have not challenged any such executive order in this case.

Temporary funding pauses are not an unusual exercise of executive authority. *See* Termination of Emergency with Respect to the Southern Border of the United States and Redirection of Funds Diverted to Border Wall Construction, Procl. No. 10,142, 86 Fed. Reg. 7225 (Jan. 20, 2021), § 1(a)(ii) (directing agencies to "pause immediately the obligation of funds related to construction of the southern border wall, to the extent permitted by law"); Tackling the Climate

---

[3] Office of Management and Budget, *OMB Q&A Regarding Memorandum M-25-13*, https://web.archive.org/web/20250130121622/https://www.whitehouse.gov/fact-sheets/2025/01/omb-q-a-regarding-memorandum-m-25-13/.

Crisis at Home and Abroad, Exec. Order. No. 14,008, 86 Fed. Reg. 7619 (Jan. 27, 2021), § 208 ("To the extent consistent with applicable law, the Secretary of the Interior shall pause new oil and natural gas leases on public lands or in offshore waters pending completion of a comprehensive review.").

To be final, agency action must (1) "mark the consummation of the agency's decisionmaking process" and (2) determine obligations or otherwise impose "legal consequences." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (internal quotations and citations omitted). The OMB Memo, like similar pauses, determined no legal consequences or final obligations for anything. Therefore, although ostensibly filed as an APA action, this case is, in reality, an attempt to challenge all executive orders mentioned in the OMB Memo and argue that all of them, regardless of their detail and content, or stage of consummation, are necessarily unlawful. But pauses implemented by those orders are part of the President's crucial authority to enforce American priorities. The President's January 24, 2025, executive order Enforcing the Hyde Amendment, Exec. Order 14182, 90 Fed. Reg. 8751 (Jan. 24, 2025), for example, serves to mandate review and compliance with an express congressional obligation, the Hyde Amendment. It is the President's responsibility and squarely within his constitutional authority to do so. Any challenge to the President's executive orders should, at a minimum, attack a particular order directly and with specificity.

## CONCLUSION

For the foregoing reasons, Amicus Curiae the American Center for Law and Justice respectfully asks this Court to deny the Plaintiffs' Motion for a Preliminary Injunction.

Respectfully Submitted,

Jordan Sekulow
   (D.C. Bar No. 991680)
Donn Parsons*
   (Ohio Bar No. 87305)
Stuart J. Roth
   (D.C. Bar No. 475937)
Andrew J. Ekonomou*
   (GA Bar No. 242750)

*/s/ Benjamin P. Sisney*
Benjamin P. Sisney
   (D.C. Bar No. 1044721)
Nathan J. Moelker
   (VA Bar No. 98313)
Liam R. Harrell*
   (D.C. Bar No. 1740309)
AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Ave., NE
Washington, DC 20002
Phone: (202) 641-9163
Fax: (202) 546-9309
Email: bsisney@aclj.org

*Counsel for Amicus Curiae*

*Not Admitted in this court

## CERTIFICATE OF SERVICE

  I hereby certify that on the 14th day of February, 2025, I electronically filed a copy of the foregoing *Amicus Curiae* Brief using the ECF System which will send notification of that filing to all counsel of record in this litigation.

| | |
|---|---|
| Dated: February 14, 2025 | /s/ *Benjamin P. Sisney* <br> Benjamin P. Sisney <br> *Counsel for Amicus Curiae* |