UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL COUNCIL OF NONPROFITS, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>OFFICE OF MANAGEMENT AND BUDGET, et al.,<br><br>*Defendants*. | Case No. 25-cv-239 |

## PLAINTIFFS' MOTION TO CLARIFY
## SCOPE OF PRELIMINARY INJUNCTION

This Court has preliminarily enjoined Defendants from implementing, giving effect to, or reinstating under a different name the unilateral, non-individualized directives in OMB Memorandum M-25-13 with respect to the disbursement of Federal funds under all open awards.  Defendants have narrowly construed the last clause of that order—"under all open awards"—in a manner that is inconsistent with the Court's preliminary injunction decision and order.

Specifically, Defendants have indicated in their notice and memorandum filed with the Court on Friday, February 28, that they interpret the Court's references to "all open awards" in the preliminary injunction order to mean not "all" open awards but instead only those open awards that have been "partially disbursed."  Plaintiffs respectfully submit that Defendants' approach does not accord with either the letter or the reasoning of the Court's preliminary injunction order and decision. Defendants' cramped interpretation appears to have led to $3.6 billion in HUD

1

Continuum of Care funding that was awarded to various grant recipients (including members of Plaintiff National Council of Nonprofits) remaining on hold. Thus, pursuant to Rule 7(b), Plaintiffs respectfully request that the Court clarify that the preliminary injunction's directives regarding "all open awards" applies to all awards that have been *awarded*—i.e., that the recipient has been notified of the decision to award the grant, loan, or other financial assistance or the award has otherwise been made public.

Pursuant to Local Rule 7(m), undersigned counsel conferred with counsel for the Defendants, who indicated that they plan to oppose this motion.

## BACKGROUND

On January 27, 2025, news broke that OMB had issued Memorandum M-25-13 (the "Freeze Order"), directing that, as of 5:00 p.m. on January 28, "Federal agencies **must temporarily pause** all activities related to obligation or disbursement of all Federal financial assistance" (emphasis in original). On January 28, Plaintiffs sought a temporary restraining order to prevent the Freeze Order from taking effect. Minutes before 5:00 p.m., this Court entered an administrative stay. That evening, the Court issued a written opinion explaining that "because an administrative stay in this case blocks executive action—a consideration that is not to be taken lightly—the court will limit its duration to only the few days it will take for expedited briefing and a hearing. It will further limit the scope of the administrative stay to OMB's direction that agencies 'pause . . . disbursement of Federal funds under all open awards,' so that it is tailored to Plaintiffs' concern that

a lapse in existing federal funding will cause irreparable injuries to recipients and their programs." Order, ECF No. 13, at 4 (Jan. 28, 2025). As the Court explained, "[i]n this way, the administrative stay does not affect OMB's memorandum as it pertains to 'issuance of new awards' or 'other relevant agency actions that may be implicated by the executive orders.'" *Id.* The Court therefore ordered Defendants to "refrain from implementing OMB Memorandum M-25-13 with respect to the disbursement of Federal funds under all open awards." *Id.* at 4–5.

As the case proceeded, this Court granted Plaintiffs' motion for a TRO, and, on February 25, for a preliminary injunction. In its preliminary injunction order, the Court directed "that Defendants are enjoined from implementing, giving effect to, or reinstating under a different name the unilateral, non-individualized directives in OMB Memorandum M-25-13 with respect to the disbursement of Federal funds under all open awards." Order, ECF No. 52, at 1 (Feb. 25, 2025). This Court further ordered that "Defendants must provide written notice of the court's preliminary injunction to all agencies to which OMB Memorandum M-25-13 was addressed" and that the notice "shall instruct those agencies that they may not take any steps to implement, give effect to, or reinstate under a different name the unilateral, non-individualized directives in OMB Memorandum M-25-13 with respect to the disbursement of Federal funds under all open awards." *Id.* That notice "shall also instruct those agencies to continue releasing any disbursements on open awards that were paused due to OMB Memorandum M-25-13." *Id.*

3

On February 28, Defendants filed a copy of the notice that OMB General Counsel Mark Paoletta had sent to the agency general counsels, dated February 27 with the subject "Preliminary Injunction Against OMB Memorandum M-25-13." ECF. No. 54-1.  That notice quoted the appropriate language from the Court's order as to the required contents of the notice.

The notice went on, however, to state that in those instructions, "'open awards' means all forms of Federal financial assistance within the scope of OMB Memorandum M-25-13 'that have already been approved and partially disbursed.' Thus, the instructions do not apply to issuance of new awards, or to awards that have not yet been awarded to specific individuals or entities (such as NOFOs)." *Id.* at 1.  Although the notice does not provide a citation for the language it quotes, it appears to come from this Court's TRO opinion.  *See* Mem. Op. & Order, ECF No. 30, at 22 (Feb. 3, 2025).  The notice further states that its instructions "do not restrict agencies' compliance with the President's recently issued Executive Orders" and hints that the instructions do not "restrict agencies' ability to take actions pursuant to their own authorities independent of OMB Memorandum M-25-13." ECF No. 54-1, at 1.

## LEGAL STANDARD

Although "there is no Federal Rule of Civil Procedure specifically governing motions for clarification," the "general purpose" of such a motion "is to explain or clarify something ambiguous or vague, not to alter or amend." *New York v. Biden*, Case No. 20-2340, 2021 WL 7908124, at *2 (D.D.C. Aug. 23, 2021) (alteration, quotation marks, and citations omitted).  Thus, "courts in this Circuit have

encouraged parties to file motions for clarification when they are uncertain about the scope of a ruling, and entertaining such motions seems especially prudent if the parties must implement the ruling at issue at subsequent stages of the litigation." *Id.* (internal quotation marks and citations omitted).[1]

## ARGUMENT

There is no dispute that the preliminary injunction does not apply to NOFOs where no grant recipient has even been selected and the grant has not been awarded. And there is no dispute that the injunction *does* apply to open awards that have already been obligated, where disbursements have begun. This motion addresses a different type of open award that Defendants have sought to exclude from the reach of the Court's order: where a grant has been awarded, but funds have not yet been disbursed.

This limited category of grants includes, for example, those awarded before OMB issued its Freeze Order, for which final paperwork may have been outstanding or for which the date of the first scheduled disbursement had not yet occurred. Among these are Continuum of Care grants administered by the Department of Housing and Urban Development. The Continuum of Care program is "designed to promote a

---

[1] Should Defendants choose to appeal the preliminary injunction order while this motion is pending, it would not deprive this Court of jurisdiction. "When an appeal is taken from an interlocutory order, such as the grant or denial of an injunction, . . . the district court retains jurisdiction to act with respect to matters not related to the issues involved in the appeal or when a district court's action would aid in the appeal." *Barnstead Broadcasting Corp. v. Offshore Broadcasting Corp.*, 869 F. Supp. 35, 38 (D.D.C. 1994) (citations omitted); *see also* 11A Wright & Miller, Fed. Prac. & Pro. § 2962 (3d ed.).

community-wide commitment to the goal of ending homelessness" by funding nonprofits, states, tribes, and localities "to quickly rehouse homeless individuals, families, persons fleeing domestic violence, dating violence, sexual assault, and stalking, and youth while minimizing the trauma and dislocation caused by homelessness; to promote access to and effective utilization of mainstream programs by homeless individuals and families; and to optimize self-sufficiency among those experiencing homelessness."[2]

On January 17, 2025, HUD announced $3.6 billion in CoC grant awards, "including approximately $189 million in funding for Youth Homelessness Demonstration Program (YHDP) renewal and replacement projects, and $62 million in funding for projects that provide housing and services to people fleeing domestic violence, dating violence, sexual assault, or stalking."[3]  Plaintiff NCN counts among its members CoC grant recipients that work to serve people who are homeless. *See* ECF No. 24-7 ¶ 6; 2d Suppl. Yentel Decl. ¶¶ 5–8.

---

[2] U.S. Dep't of Housing & Urban Development, *FY2024 Continuum of Care Notice and Funding Report* (Jan. 17, 2025), https://perma.cc/DTY9-KSSD.

[3] *Id.*  The press release announcing those awards has since been removed from HUD's website.  *Compare* U.S. Dep't of Housing & Urban Development, *Press Releases* (last visited Mar. 3, 2025), https://perma.cc/BD6E-YMJF (listing the January 17, 2025 press release about these awards), *with* U.S. Dep't of Housing & Urban Development, *403 - Page Not Found* (last visited Mar. 3, 2025), https://www.hud.gov/press/press_releases_media_advisories/hud_no_25_023 (showing an error page after clicking on the link for the January 17, 2025 press release).  The press release appears to be available in an archived format here: https://web.archive.org/web/20250117203358/https://www.hud.gov/press/press_releases_media_advisories/hud_no_25_023.

Although these CoC grants were awarded before the Freeze Order, disbursements have not yet begun.[4] *See* 2d Suppl. Yentel Decl. ¶¶ 4–8.[5] They, and others with a similar posture, are most appropriately understood as "open awards" for which Defendants are enjoined from implementing "the unilateral, non-individualized directives in OMB Memorandum 25-13." Order at 1. The fact that disbursements have not yet begun does not change the fact that the grants have been awarded to individual recipients that were counting on funds flowing as expected, bringing them within the letter and logic of the Court's preliminary injunction decision.

---

[4] Plaintiffs understand that, in the ordinary course, CoC grant award announcements on HUD's website are followed, within a few weeks, by individual award letters to each recipient. The issuance of those letters confirming awards that have already been publicly announced is purely a ministerial task that does not move these awarded grants outside the category of "all open awards" as used in the Court's preliminary injunction decision and order. And just as the Court's injunction bars the withholding of payments on those open awards because of the Freeze Order, it likewise bars the withholding of award letters that appear to be a necessary (if ministerial) prerequisite to the funds actually flowing. The Court considered (and found likely unlawful, at least with respect to open awards) language in the Freeze Order requiring a pause on "all activities related to obligation and disbursement"—a set of activities that includes not only the actual payment of money but also other steps necessary for the ordinary obligation and disbursement of financial assistance under open awards.

[5] As another example: reporting states that $5 million in HUD grant funding for Montgomery County, Pennsylvania has been withheld, and that if it is not received a CoC marshaling programs that assist with rent, domestic violence protection, eviction prevention, outreach to people who are homeless, and preventing at-risk children from being left on the streets will no longer be able to operate. *See* Justin Heinze, *Montco 'Ghosted' By Federal Government, $5M In Critical Funding Withheld*, Patch (Mar. 3, 2025), https://patch.com/pennsylvania/norristown/montco-ghosted-federal-government-5m-key-funding-withheld.

Plaintiffs have focused their request for preliminary relief on open awards rather than NOFOs in large part because the harms from Defendants' irrational Freeze Order would be especially severe for those who had already been awarded and were counting on receiving (or may even have begun to draw on) federal financial assistance. That reasonable reliance on being able to access financial assistance *that has already been awarded*, and the harms to recipients from Defendants' sudden halt to such assistance, exist regardless of whether disbursement on an open award has yet begun. While some awarded grants may have been subject to additional paperwork to process the first disbursement, the kind of agency activity associated with such ministerial grants management is different in kind from forthcoming decisions on which grants to award under outstanding NOFOs, a category of grants not covered by the Court's order.

Accordingly, the legal principles that govern this Court's preliminary injunction analysis apply with equal force to grants that have been awarded but not yet disbursed. As this Court has observed, the Freeze Order was "irrational, imprudent, and precipitated a nationwide crisis"; it had "no clear statutory hook for this broad assertion of power"; and "may be crossing a constitutional line." Mem. Op., ECF No. 51, at 30–31, 33, 35. None of these conclusions rest in any way on whether disbursements on an awarded grant have already begun or not; indeed, reliance interests attach in both situations. And the irreparable harm and public interest analyses likewise do not rely on a disbursement having already been made: grant recipients expect that when they have been awarded a grant, they can count on that

money, and budget accordingly. When the rug is swept out from under them, the services they are able to offer suffer, and so do the communities they serve. This is particularly the case for grant renewals, as the award of a renewal enables the recipient to plan that its current level of service will continue. *See* 2d Suppl. Yentel Decl. ¶¶ 5–6, 9. Pausing the initial disbursement of an already awarded renewal has an effect that is essentially indistinguishable from pausing a renewal after the first disbursement had gone out the door.

Although one passage of the Court's TRO Order could be read to equate "open awards" with "ones that have already been approved and partially disbursed," *see* ECF No. 30, at 22, that (1) does not appear to be what the Court was actually saying, and (2) would place inordinate weight on a single line that did not appear in the Court's preliminary injunction order or decision (the relevant documents now) and was not material even to the Court's TRO analysis. The Court included its aside about grants "partially disbursed" in distinguishing *Village of Bensenville v. Federal Aviation Administration*, 457 F.3d 52 (D.C. Cir. 2006). In that case, the court concluded that there was no final agency action stemming from the agency's letter of intent proposing a reimbursement schedule, in part because the reimbursement recipient had to file additional documents before disbursement. *Id.* at 69. As this Court correctly noted, that case cannot govern a situation where funds have already been approved and partially disbursed. That analysis holds as well for funds that have been awarded but not yet been disbursed. First, the agency action of which Plaintiffs complain is not disbursement as to any *specific* grantee, but rather the

9

*programmatic* "freeze first, ask questions later" directive the Freeze Order mandated. Second, as the *Bensenville* court made clear, a letter of intent is (as the name reflects) merely a "planning document" that requires the hopeful grant recipient "to file a further grant application for approval." *Id.* The funding decision not only "require[s] further administrative process," it is also "contingent on congressional appropriation." *Id.* That set of facts is far afield from, for example, CoC funding where grant recipients have not only filed their grant application for funds that have already been congressionally appropriated, but actually been awarded the grant.

    The Court's explanation for limiting the scope of the administrative stay only underscores this analysis. The Court explicitly noted that it was limiting the scope of the stay because of the procedural posture, before expedited briefing and a hearing, ECF No. 13, at 4, considerations that no longer bear weight after multiple rounds of briefing and two hearings. The Court limited the scope of the stay to the directive to pause disbursement "under all open awards" so the stay would be "tailored to Plaintiffs' concern that a lapse in existing federal funding will cause irreparable injuries to recipients and their programs." *Id.* The Court distinguished this scenario from the "issuance of new awards." *Id.* As explained above, Plaintiffs' concern applies with full force to grants already awarded, which are quite different from wholly new awards. Plaintiffs believe the Court's order blocking Defendants' directive to pause the disbursement of funds "under all open awards" covers grants that have been awarded but not yet disbursed and seeks to have the Court clarify given Defendants' narrow interpretation of the Court's ruling. To the extent that the Court understands

10

its order not to have addressed awards that were awarded but not disbursed, Plaintiffs ask that the Court address such awards now.

## CONCLUSION

For the foregoing reasons, the Court should enter the attached proposed order clarifying that the preliminary injunction's directive as to "all open awards" applies to federal grants that have been awarded, and directing that Defendants clarify and reissue their notice to agencies accordingly.

Dated: March 4, 2025              Respectfully submitted,

/s/ *Jessica Anne Morton*

Jessica Anne Morton (DC Bar No. 1032316)
Kevin E. Friedl* (Admitted only in New York; practice supervised by DC Bar members)
Kaitlyn Golden (DC Bar No. 1034214)
Robin F. Thurston (DC Bar No. 1531399)
Skye L. Perryman* (DC Bar No. 984573)
Will Bardwell* (DC Bar No. 90006120)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
jmorton@democracyforward.org
kfriedl@democracyforward.org
kgolden@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org
wbardwell@democracyforward.org.

*admitted *pro hac vice*

## CERTIFICATE OF SERVICE

On March 4, 2025, I caused the foregoing and accompanying declaration and proposed order to be filed electronically via the Court's CM/ECF system, which provides electronic notice to all counsel of record.

Dated:  March 4, 2025                                   /s/ *Jessica Anne Morton*
                                                        Jessica Anne Morton