**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL COUNCIL OF NONPROFITS, et al., *Plaintiffs*, v. OFFICE OF MANAGEMENT AND BUDGET, et al., *Defendants*. | Case No. 25-cv-239 |

## SECOND SUPPLEMENTAL DECLARATION OF DIANE YENTEL

I, Diane Yentel, declare as follows:

1. I am the President and CEO of the National Council of Nonprofits (NCN), which is the largest sector-wide network of nonprofits in the United States.

2. I submit this declaration to supplement the declarations I submitted in this case on January 28, 2025 and January 31, 2025. I have based this declaration on my personal knowledge and review of NCN business records.

3. As I explained in my first supplemental declaration, my job as the leader of NCN is to give voice to the many nonprofits across the United States, which involves spending a lot of time listening to our nonprofit members.

4. I have recently become aware (through my members) of a segment of federal grant funding that appears to still be frozen, notwithstanding this Court's orders. Specifically, I have become aware that some grants that had been awarded, but where disbursement had not yet begun, remain frozen.

1

5.  I am aware that multiple NCN members were awarded Continuum of Care grants from the Department of Housing and Urban Development on January 17, 2025; this includes both new grants and renewals of prior grants. Nevertheless, my understanding is that HUD has frozen any further progress on these awarded grants, and so they have not begun to be disbursed.

6.  For example, I understand that our member ▇▇▇▇▇▇ was awarded CoC grants on January 17, 2025, including eleven renewals totaling more than $11 million. ▇▇▇▇▇▇ serves more than 2,100 people each day in the ▇▇▇ area, including through four shelter locations and 1,100 units of permanent supportive housing; they also provide outreach and workforce development programs. I understand from ▇▇▇▇▇▇ that they (and, as far as they know, other grantees, with which I understand they have periodic information sharing) have not received any information about the status of the funds that were awarded on January 17.

7.  I understand that another one of our members, the ▇▇▇▇▇▇ ▇▇▇▇▇▇, was awarded three CoC grants by HUD on January 17, 2025. ▇▇ serves about 7,000 people per month in their capacity as a continuum of care, working to plan and implement the task of how to end homelessness in their area. ▇▇ has not yet received their grant agreements, which is a typical next step after a grant has been awarded and before funds are actually disbursed.

8.  Another one of our members, ▇▇▇▇▇▇, leads a community-wide homelessness planning effort for ▇▇▇▇▇▇, an area where around 5,000 people experienced homelessness last year. I understand that ▇▇▇▇▇▇ is still

2

waiting on a CoC grant that should have already started. The grant had been awarded and the agreement finalized and was simply in a queue awaiting signature when a contact at HUD reported that they had been instructed not to continue processing any new or renewal agreements. ▬▬▬▬▬▬ has also been awarded a permanent supportive housing grant, which is intended to replace an existing permanent supportive housing grant that expires on April 30. If HUD does not finalize that grant contract before April 30, it could result in 129 households—including 82 children—losing their housing if ▬▬▬▬▬▬ is not able to obtain gap funding from another source.

9. From my experience working with nonprofits, I know that they count on awarded grants in planning their budgets. Nonprofits make decisions about the services they can continue to offer in reliance on those awards. This is particularly true for grant renewals, where nonprofits typically plan to use the renewal to support a continuation of services. Having open awards stalled and funds frozen is equally disruptive to a nonprofit whether it happens before the first installment is disbursed or afterwards: the impact on the nonprofit and the services it is able to offer are equally devastating. For CoC grant recipients, the concrete harm that follows from losing awarded and therefore anticipated funding is severe: the reduction in services or shuttering of homeless shelters and transitional housing programs that affect some of the most vulnerable Americans.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 4, 2025.

3

_____
Diane Yentel