IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| National Council of Nonprofits, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 1:25-cv-239 ) |
| Office of Management and Budget, *et al.*, | ) ) ) |
| Defendants. | ) ) ) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO CLARIFY SCOPE OF PRELIMINARY INJUNCTION**

Plaintiffs' motion for clarification improperly seeks to alter or amend an unambiguous order of the Court and should therefore be rejected. The Court's preliminary injunction order expressly applied "with respect to the disbursement of Federal Funds under all open awards." In its order granting a temporary restraining order, the Court expressly referred to "open awards" as "ones that have already been approved and partially disbursed." ECF No. 30 at 22. Defendants quoted that exact phrasing in their written notices to federal agencies regarding both the Court's temporary restraining order and preliminary injunction order, and that is the understanding Defendants (and other agencies) have operated under for over a month. The Court's orders were unambiguous, and Plaintiffs did not object to Defendants' use of this definition in their written notice regarding the Court's temporary restraining order. In fact, Plaintiffs represented that the Court's temporary restraining order provided them the relief they sought, and stated that their preliminary injunction motion was only requesting relief within the same bounds. Yet now, weeks after Defendant first filed a written notice containing this language, Plaintiffs seek to contest this definition of "open awards," on the rationale that the Court's own reference to open awards "does

not appear to be what the Court was actually saying." Mot. to Clarify (ECF No. 56) at 9. The Court should reject Plaintiffs' motion, because the Court's order was not vague or ambiguous.

The Court should also deny Plaintiffs' motion because it seeks to improperly alter or amend the Court's preliminary injunction order. The Court's order was clear that OMB's instructions to agencies applied only with respect to the "disbursement" of federal funding, but Plaintiffs' motion seeks to expand those instructions to apply to additional activities, including those relating to the obligation of funding. Indeed, Plaintiffs' motion and its supporting declaration make clear that they are asking the Court to alter its ruling to relate not just to "disbursement" of funding but also to other grant-related activities including the signing of grant agreements. While Plaintiffs do not expressly acknowledge that they are seeking to amend the Court's order to apply with respect to obligation of funding, this fact is laid bare in their proposed order, which seeks to require Defendants to instruct federal agencies not just regarding "disbursement" of Federal funds, but also "with respect to all activities related to the obligation . . . of Federal funds." The Court's order only applied with respect to "disbursement" of federal funding, and Plaintiffs cannot use a motion to clarify as a vehicle to materially expand the Court's order. Plaintiffs' attempt to do so only underscores the fact that they seek to use this lawsuit to turn this Court into a superintendent over countless Executive Branch decisions made by non-defendant agencies relating to federal funding.

Finally, Plaintiffs' motion should also be rejected because they do not identify any harm to them caused by Defendants' instructions. Plaintiffs allege that certain Plaintiff members have been awarded Continuum of Care grants by the Department of Housing and Urban Development ("HUD") and have not received disbursement of funding. However, after the Court issued its temporary restraining order, Defendants provided an identical instruction to federal agencies regarding the definition of "open awards," and Plaintiffs subsequently represented that the Court's

temporary restraining order was holding any alleged harm to them at bay, even though the relevant Plaintiff members had allegedly already received their awards and had not received disbursement of funding. Plaintiffs do not come forth with any direct evidence that runs counter to their prior representations that Defendants' instruction was adequate to prevent harm to them. Instead, Plaintiffs rely on a hearsay declaration that merely makes generalized allegations of potential harm. Furthermore, Plaintiffs fail to explain how any alleged harm to the relevant Plaintiff members is attributable to the challenged OMB Memorandum 25-13, *Temporary Pause of Agency Grant, Loan, and Other Financial Assistance Programs* (Jan. 27, 2025) ("OMB Memo"), given that those members were apparently awarded Continuum of Care grants on January 17, 2025 and they did not sign a grant agreement or receive disbursements prior to the January 27, 2025 issuance of the OMB Memo. Given that Plaintiffs have not demonstrated that they are harmed by the instruction they object to, they fail to show that any clarification is necessary, let alone a material expansion of the Court's order.

## BACKGROUND

On January 28, 2025, Plaintiffs filed this case against OMB and the Acting Director of OMB, seeking an order nullifying the OMB Memo. *See* Compl. (ECF No. 1). Plaintiffs moved for a temporary restraining order against the OMB Memo, *see* ECF No. 5, and this Court entered a partial administrative stay as to the Memo, directing that "Defendants shall refrain from implementing OMB Memorandum M-25-13 with respect to the disbursement of Federal funds under all open awards." ECF No. 13 at 4-5. The Court explained that the scope of the administrative stay was "tailored to Plaintiffs' concern that a lapse in existing federal funding will cause irreparable injuries to recipients and their programs." *Id.* at 4.

While OMB rescinded the challenged OMB Memo the day after this Court's administrative stay, the parties proceeded to litigate Plaintiffs' motion for a temporary restraining order as well as Defendants' motion to dismiss. *See* ECF Nos. 5, 20, 24, 26. This Court held a hearing on February 3, 2025, after which the Court entered a temporary restraining order and denied Defendants' motion to dismiss. *See* TRO Op. & Order (ECF No. 30). The Court ordered that "Defendants are enjoined from implementing, giving effect to, or reinstating under a different name the directives in OMB Memorandum M-25-13 with respect to the disbursement of Federal funds under all open awards." *Id.* at 29. The Court also ordered that "Defendants must provide written notice of the court's temporary restraining order to all agencies to which OMB Memorandum M-25-13 was addressed," with that written notice "instruct[ing] those agencies that they may not take any steps to implement, give effect to, or reinstate under a different name the directives in OMB Memorandum 25-13 with respect to the disbursement of Federal Funds under all open awards" and "also instruct[ing] those agencies to release any disbursements on open awards that were paused due to OMB Memorandum M-25-13." *Id.* In discussing "open awards," the Court's Order referred to them as "ones that have already been approved and partially disbursed." *Id.* at 22.

Consistent with the Court's order, Defendants filed a copy of the required written notice with the Court on February 5, 2025. *See* ECF Nos. 39, 39-1. In the written notice, Defendants instructed agencies that they "may not take any steps to implement, give effect to, or reinstate under a different name the directives in OMB Memorandum M-25-13 with respect to the disbursement of Federal Funds under all open awards" and that they must "release any disbursements on open awards that were paused due to OMB Memorandum M-25-13." ECF No. 39-1. Consistent with the Court's language regarding "open awards," Defendants' written notice provided that "[i]n the above instructions, 'open awards' means all forms of Federal financial

4

assistance within the scope of OMB Memorandum M-25-13 'that have already been approved and partially disbursed.'" *Id.* In their status report attaching the written notice, Defendants "respectfully request[ed] that the Court notify the Defendants if they have misunderstood the intended scope of the Court's Order." ECF No. 39 at 2. The Court did not raise any concerns regarding Defendants' interpretation of its Order. Furthermore, Plaintiffs did not raise any concerns to counsel for Defendants or the Court regarding Defendants' written notice.

Subsequently, the parties litigated Plaintiffs' motion for preliminary injunction. *See* ECF Nos. 40, 47, 49. In Plaintiffs' motion for preliminary injunction, they made clear that "[t]he individual declarants who at the TRO stage described their difficulties accessing funds have since been able to draw on their open awards." Mot. for Prelim. Inj. (ECF No. 40) at 9. They further noted that "[m]any others of Plaintiffs' members are now also able to draw on open awards." *Id.* Plaintiffs attributed this to the Court's temporary restraining order, stating that "Plaintiffs complained that the OMB Memo froze the disbursement of open grant awards" and that "[t]his Court entered the relief Plaintiffs sought, and those funds began flowing again." *Id.* at 33 n.10; *see also* Reply in Support of Mot. for Prelim. Inj. (ECF No. 49) at 20 (stating that "declarants can now draw on their open awards" and that "declarants received relief only because this Court ordered it").

The Court held a hearing on Plaintiffs' motion for preliminary injunction on February 20, 2025. At the hearing, Plaintiffs reiterated that "funds have been unfrozen" and that "the declarants, whose testimony supported [their] motion for a TRO, have been able to access their funds." PI Hrg. Tr. at 3. Thus, in arguing for a preliminary injunction, Plaintiffs told the Court that "the TRO has had a real effect for our clients in getting their members access to funding that they're entitled to under open awards." *Id.* at 4. Regarding the scope of relief, the Court noted that "when we first

5

were here on the administrative stay and again on the TRO, all we were focused on was the disbursement of monies under open awards." *Id.* at 19.  The Court asked if that was "still [Plaintiffs'] position." *Id.*  Plaintiffs replied that they were "still requesting relief sort of within the bounds originally described at the TRO stage, so for open awards." *Id.*  Additionally, the Plaintiffs also discussed their claims as relating to "the continued receipt of funds on open awards" and described their alleged fear "that their money is not going to resume." *Id.* at 53-54.

On February 25, 2025, the Court granted Plaintiffs' motion for preliminary injunction.  *See* ECF Nos. 51, 52.  The Court's order was substantively similar in scope to its temporary restraining order.  Specifically, the Court ordered that "Defendants are enjoined from implementing, giving effect to, or reinstating under a different name the unilateral, non-individualized directives in OMB Memorandum M-25-13 with respect to the disbursement of Federal funds under all open awards." ECF No. 52 at 1.  The Court further ordered that "Defendants must provide written notice of the court's preliminary injunction to all agencies to which OMB Memorandum M-25-13 was addressed," and that that written notice must "instruct those agencies that they may not take any steps to implement, give effect to, or reinstate under a different name the unilateral, non-individualized directives in OMB Memorandum M-25-13 with respective to the disbursement of Federal Funds under all open awards," and "instruct those agencies to continue releasing any disbursements on open awards that were paused due to OMB Memorandum M-25-13." *Id.*

Consistent with the Court's order Defendants filed a copy of the written notice on February 28, 2025.  *See* ECF Nos. 54, 54-1.  Defendants' notice was substantially the same as the written notice they provided to agencies regarding the Court's temporary restraining order.  Defendants instructed agencies that they "may not take any steps to implement, give effect to, or reinstate under a different name the unilateral, non-individualized directives in OMB Memorandum M-25-

6

13 with respect to the disbursement of Federal Funds under all open awards" and that they must "continue releasing any disbursements on open awards that were paused due to OMB Memorandum M-25-13." ECF No. 54-1.  As they had done in their written notice regarding the temporary restraining order, and consistent with the definition of "open awards" set forth in the Court's order granting the temporary restraining order, Defendants' written notice stated that "'open awards' means all forms of Federal financial assistance within the scope of OMB Memorandum M-25-13 'that have already been approved or partially disbursed.'" *Id.*

On March 4, 2025, Plaintiffs filed a motion to clarify the scope of the Court's preliminary injunction.  *See* ECF No. 56.  For the first time, Plaintiffs contested the definition of "open awards" that was contained in Defendants' written notice to agencies that was filed on February 5, 2025, and in Defendants' written notice to agencies that was filed on February 28, 2025.  Plaintiffs ask the Court to "clarify" that the term "open awards" in the Court's preliminary injunction order "includes all forms of Federal financial assistance that have been awarded (e.g., an award that has been publicly announced or news of the award has been communicated to the grantee), regardless of whether those funds have been partially disbursed," ECF No. 56-2 at 1; *see also* ECF No. 56 at 2, rather than applying the definition of "open awards" as Federal financial assistance within the scope of the OMB Memo "that ha[s] already been approved and partially disbursed," ECF No. 30 at 22.  Plaintiffs further request that the Court expand its preliminary injunction order's directives to OMB beyond just *disbursement* but also to the *obligation* of federal financial assistance—asking the Court to require that Defendants instruct federal agencies "that they may not take any steps to implement, give effect to, or reinstate under a different name the unilateral, non-individualized directives in OMB Memorandum M-25-13 with respect to *all activities related to the obligation or disbursement of Federal Funds under all open awards, regardless of whether the funds have*

7

*been partially disbursed.*" ECF No. 56-2 at 1-2 (emphasis added). Similarly, Plaintiffs ask that the Court direct Defendants to instruct agencies "to continue *all activities related to obligating* and releasing any disbursements on open awards that were paused due to OMB Memorandum M-25-13." *Id.* at 2 (emphasis added).

## ARGUMENT

**I.      Clarification is Unnecessary Because the Court's Order was not Ambiguous or Vague**

"The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend." *United States v. Philip Morris USA Inc.*, 793 F. Supp. 2d 164, 168 (D.D.C. 2011). Plaintiffs seek to clarify the scope of the Court's preliminary injunction, because they contend that Defendants' instruction to federal agencies "narrowly construed" the Court's order "in a manner that is inconsistent with the Court's preliminary injunction decision and order." ECF No. 56 at 1. No such clarification is necessary. The Court's order was not "ambiguous or vague." The Court previously referred to "open awards" as awards "that have already been approved and partially disbursed." ECF No. 30 at 22. In their written notice to federal agencies regarding the Court's preliminary injunction order, Defendants adopted that same language, defining "open awards" to include "all forms of Federal financial assistance within the scope of OMB Memorandum M-25-13 'that have already been approved and partially disbursed.'" ECF No. 54-1 at 1. Plaintiffs now object to this definition of the term "open awards" because it requires that awards have been partially disbursed. But there is no ambiguity here, as highlighted by Plaintiffs' failure to object to this definition during the several-week period since Defendants filed their written notice implementing the Court's TRO, and given that Defendants' instructions directly quoted the Court's own language regarding "open awards."

Plaintiffs do not meaningfully argue that clarification from the Court is necessary regarding Defendants' use of language taken directly from the Court. Instead, Plaintiffs assert that the

8

Court's own language "does not appear to be what the Court was actually saying." ECF No. 56 at 9. Plaintiffs do not explain the basis for this conclusion, failing to point to any language in which the Court suggested that "open awards" include awards that have not been partially disbursed. Plaintiffs analyze the *Village of Bensenville v. Federal Aviation Administration*, 457 F.3d 52 (D.C. Cir. 2006) case that the Court was discussing when the Court referred to "open awards" in this manner, *see* ECF No. 56 at 9-10, but Plaintiffs fail to explain why the details of that case bear on the Court's understanding of "open awards," let alone suggest that the Court had a different definition in mind. To the contrary, while the Court's preliminary injunction decision did not expressly define the term "open awards" again, the Court's order implicitly endorsed its prior understanding of the term, ordering Defendants to instruct agencies to "continue releasing" any disbursements on open awards, ECF No. 52 at 1—language which appears to presuppose that disbursements have previously been made.

Further underscoring the lack of need for clarification of the Court's preliminary injunction order, Defendants' previous written notice to federal agencies regarding the Court's temporary restraining order used the exact same language defining "open awards." *See* ECF No. 39-1 at 1. That written notice was filed on the docket on February 5, 2025, and Plaintiffs never objected to it, despite there being 20 days between Defendants' filing of that written notice and the Court's issuance of its preliminary injunction order.

On top of not objecting to the identical language in Defendants' written notice regarding the Court's temporary restraining order, Plaintiffs expressly disavowed any request for broader relief at the preliminary injunction stage than they had received at the TRO stage. In the preliminary injunction hearing, the Court noted to Plaintiffs' counsel that "when we first were here on the administrative stay and again on the TRO, all we were focused on was the disbursement of

9

monies under open awards." PI Hrg. Tr. at 19. The Court asked Plaintiffs: "Is that still your position or are you seeking a PI as it goes to the NOFOs or sort of other aspects of the memo?" *Id.* Plaintiffs replied that "[t]hat is still our position" and "[w]e're still requesting relief sort of within the bounds originally described at the TRO stage, so for open awards." *Id.*

Thus, at the TRO stage, Defendants' written notice defined "open awards" using the Court's stated description of the term. Plaintiffs did not object to that interpretation and proceeded to expressly seek preliminary injunctive relief within the same bounds as the relief they sought and received at the TRO stage. Plaintiffs cannot now seek "clarification" from the Court regarding an identical instruction. The Court has been clear regarding its definition of the term "open awards," and Defendants' written notice is entirely consistent with the Court's definition and prior orders.

## II. Plaintiffs' Motion Improperly Seeks to Materially Alter the Court's Preliminary Injunction

Plaintiffs' motion also fails because Plaintiffs improperly seek to use a motion for clarification to "alter or amend" the Court's order. *Philip Morris USA Inc.*, 793 F. Supp. at 168. While Plaintiffs seek to portray their motion as merely requesting clarification regarding the term "open awards," they are actually seeking an expansion of the Court's preliminary injunction order, to require OMB's instructions to address not only disbursement of funding but also additional activities, including relating to obligation of funding—which is well beyond the express boundaries of the Court's order and the relief Plaintiffs previously stated they were requesting. *Id.* ("The general purpose of a motion for clarification is . . . not to alter or amend.").

While the OMB Memo instructed federal agencies to temporarily pause activities relating to "obligation or disbursement" of federal financial assistance, OMB Memo at 2, the Court's preliminary injunction order is clear that it applies only "with respect to the *disbursement* of Federal Funds under all open awards." ECF No. 52 at 1 (emphasis added). And as discussed

above, at the preliminary injunction hearing, the Court specifically noted to Plaintiffs that at the administrative stay and TRO stages "all we were focused on was the disbursement of monies under open awards" and proceeded to ask if Plaintiffs were "seeking a PI as it goes to the NOFOs or sort of other aspects of the Memo." PI Hrg. Tr. at 19. Plaintiffs responded that they were "still requesting relief sort of within the bounds originally described at the TRO stage." *Id.* In other words, the Court asked if Plaintiffs were seeking a preliminary injunction as to aspects of the OMB Memo beyond the *disbursement* of monies under open awards, and Plaintiffs disclaimed any such broader request.

Yet now, in their motion to clarify, Plaintiffs seek to expand the Court's preliminary injunctive relief not only to instructions regarding the disbursement of funding, but also to the obligation of funding. This is made clear from the lone example Plaintiffs provide of a program in which grants have allegedly been awarded to Plaintiffs but for which funds have not yet been disbursed—the HUD Continuum of Care program. Plaintiffs attach a declaration that purports to identify National Council of Nonprofits members who were awarded a Continuum of Care grant but have not yet signed the grant agreement, and suggest that the Court's order should be clarified to apply with respect to this circumstance. *See* ECF No. 56-1 ¶¶ 7-8. This amounts to a request for the Court's order to extend to non-disbursement activities, including the obligation of funding. Under the Continuum of Care program, HUD announces awards, and then identifies the "conditions" imposed on that award, and "notif[ies] selected applicant[]" of those conditions. 24 C.F.R. § 578.21(b). Those "[c]onditions must be satisfied before HUD will execute a grant agreement with the applicant." *Id.* Applicants must "correct[] all issues" and "conditions attached to an award must be completed within the timeframe established in the NOFA." *Id.* § 578.21(c). "Proof of site control, match, environmental review, and the documentation of financial feasibility

must be completed within 12 months of the announcement of the award, or 24 months in the case of funds for acquisition, rehabilitation, or new construction." *Id.* "HUD will withdraw an award if the applicant does not satisfy all conditions imposed on it." *Id.* Only after conditions are satisfied will the grant agreement be executed. *See id.* § 578.21(b); *see also id.* § 578.23 (governing the required Continuum of Care grant agreements, including the various terms recipients must agree to in the grant agreement). Thus, after a Continuum of Care grant is awarded, there is a significant and potentially lengthy administrative process prior to the grant agreement being signed and the funds being obligated to the recipient.[1] Given their use of this example, it is clear that Plaintiffs seek to use a motion to clarify to expand the Court's order to enjoin OMB to issue instructions to agencies not only with respect to disbursement of Federal funds, but also with respect to these kinds of obligation activities.

If there was any doubt that Plaintiffs seek to expand the Court's order to the obligation of funding, such doubt is extinguished by Plaintiffs' proposed order. Their proposed order would require Defendants to provide written notice instructing federal agencies that "they may not take any steps to implement, given effect to, or reinstate under a different name the unilateral, non-individualized directives in OMB Memorandum M-25-13 with respect to **all activities related to the obligation** or disbursement of Federal funds under all open awards, regardless of whether the funds have been partially disbursed." ECF No. 56-2 at 1-2 (emphasis added). Similarly, it would require Defendants to instruct federal agencies "to continue **all activities related to obligating**

---

[1] Plaintiffs' discussion of the *Village of Bensenville* case actually underscores the breadth of the relief Plaintiffs seek. Plaintiffs attempt to distinguish that case from Continuum of Care funding on the grounds that the funding decision in *Village of Bensenville* "require[d] further administrative process," ECF No. 56 at 10 (quoting 457 F.3d at 69), ignoring the fact that disbursal of money under the Continuum of Care program requires "further administrative process" before a grant agreement is signed.

12

and releasing any disbursements on open awards that were paused due to OMB Memorandum M-25-13." *Id.* at 2 (emphasis added). The proposed order's language regarding obligation activities was not present in the Court's preliminary injunction order, making clear that Plaintiffs seek to materially expand the scope of the Court's order.

Plaintiffs' motion offers little justification for this request for expanded relief. Plaintiffs allude to this in a footnote, stating that the Court found likely unlawful a pause on "all activities related to obligation and disbursement" and asserting that includes "not only the actual payment of money but also other steps necessary for the ordinary obligation and disbursement" of funding. ECF No. 56 at 7 n.4. But Plaintiffs ignore the fact that the Court's order expressly applies only with respect to "disbursement" of funding. ECF No. 52 at 1. There is no need to clarify whether the Court's order applied to obligation of funding, when it expressly did not.

Plaintiffs' attempt to expand this Court's order to apply to obligation activities further highlights the fact that Plaintiffs seek to use a single lawsuit against OMB—which they claim challenged "specific final agency action," ECF No. 49 at 12—to supervise countless individual funding decisions by non-defendant agencies under the guise of ordering OMB to issue various "instructions" to agencies. Indeed, when combined with the threat of contempt against the government, Plaintiffs' requested relief highlights that they are seeking to use this Court as a superintendent over Executive Branch decisions relating to the obligation of funding. This would include superintending individual agency decisions such as the signing of grant agreements or the determination of whether applicants have satisfied conditions imposed on their awards. *See supra* (discussing those pre-disbursement activities in relation to the Continuum of Care program). That is especially troubling given that grant programs and individual grants often provide procedures designed to address concerns with, and provide any appropriate remedy regarding, administration

13

of the grant. *See, e.g.*, 24 C.F.R. § 578.35 (setting forth procedures for appealing agency decisions regarding the Continuum of Care program).[2] Such procedures would provide the proper remedy for any individual claim for relief relating to these individual agency decisions regarding grants, rather than Plaintiffs improperly asking this Court to oversee such decisions under the guise of ordering OMB to issue various "instructions" to agencies.

### III.    Plaintiffs Fail to Demonstrate Harm Caused by Defendants' Instruction

Even assuming *arguendo* that Plaintiffs were not seeking to alter or amend an unambiguous order of this Court, their request for clarification would fail because they provide no direct evidence that Defendants' instruction harms them and therefore no reason that clarification is necessary.

To begin with, Plaintiffs affirmatively represented to the Court that its temporary restraining order—for which Defendants issued an identical instruction regarding the definition of "open awards"—provided them with the relief they sought. Indeed, in their February 11, 2025 motion for preliminary injunction, Plaintiffs stated that after they "complained that the OMB Memo froze the disbursement of open grant awards," "[t]his Court entered the relief Plaintiffs sought and those funds began flowing again." ECF No. 40 at 33 n.10; *see also* ECF No. 49 at 20 (asserting that "declarants can now draw on their open awards" and alleging they "received relief only because this Court ordered it"). Plaintiffs reiterated this at the February 20, 2025 preliminary injunction hearing, informing the Court that "the TRO has had a real effect for our clients in getting their members access to funding that they're entitled to under open awards." PI Hrg. Tr. at 4.

---

[2] In addition, in the event that an entity does have a grant agreement with a federal agency, depending on the particular instrument, some claims regarding that grant might proceed under the Tucker Act, 28 U.S.C. § 1491(a)(1), which provides the Court of Federal Claims with exclusive jurisdiction over breach claims for express or implied contracts where the amount in controversy exceeds $10,000.

14

According to Plaintiffs, after the Court entered the temporary restraining order, Defendants' actions "threaten[ed] to harm them, but for the temporary restraining order holding it at bay." ECF No. 49 at 20 n.9.

Plaintiffs now allege that certain members of the National Council of Nonprofits are being harmed by Defendants' instruction regarding the definition of "open awards," because they were allegedly awarded Continuum of Care grants and funds have not been disbursed. ECF No. 56 at 5-7; *see also* ECF No. 56-1. Given that Defendants' prior written notice with an identical instruction regarding the definition of "open awards" was adequate to "hol[d] [harm to Plaintiffs] at bay," ECF No. 49 at 20 n.9, Plaintiffs cannot now claim that they would be irreparably harmed in the absence of clarification (and expansion) of the Court's preliminary injunction. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (any alleged irreparable harm "must be both certain and great; it must be actual and not theoretical" and it must be of such "*imminence* that there is a clear and present need for equitable relief" (emphasis in original)).

Moreover, Plaintiffs' motion does not provide any direct evidence of Plaintiffs being harmed. Instead, Plaintiffs rely wholly on a declaration from the President and CEO of the National Council of Nonprofits which purports to recount the circumstances surrounding anonymous members' Continuum of Care grants. *See* ECF No. 56-1. Not only is Plaintiffs' declaration hearsay, but it merely makes generalized allegations of harm allegedly stemming from Defendants' instructions, speculating about potential harm to Continuum of Care grant recipients based simply on the declarant's "experience working with nonprofits." ECF No. 56-1 ¶ 9; *see also id.* ¶ 8 (speculating regarding what could happen to another individual "if [that individual] is not able to obtain gap funding from another source"). Such generalized hearsay is inadequate to satisfy

the "high standard for irreparable harm" required by the D.C. Circuit, *Chaplaincy*, 454 F.3d at 297, and therefore cannot justify an expansion of the scope of the Court's preliminary injunction.

Furthermore, even if Plaintiffs had adequately alleged harm to certain Continuum of Care applicants, they have failed to provide anything more than speculation that such harm is caused by the rescinded OMB Memo, rather than by independent decisions of HUD (which is not a defendant in this case) or other relevant circumstances. Plaintiffs make no effort to show that any alleged pause or delay in HUD's processing of grant agreements is attributable to the OMB Memo. And their own allegations suggest otherwise, since the relevant Plaintiff members were awarded Continuum of Care grants on January 17, 2025—well *before* the January 27, 2025 issuance of the OMB Memo—and they apparently did not receive disbursement of funding in the meantime. *See* ECF No. 56 at 6; *see also* ECF No. 56-1 ¶¶ 6-7. Plaintiffs do not acknowledge or explain why these Plaintiff members did not sign a grant agreement and receive disbursements prior to the issuance of the OMB Memo. Nor do they address whether or when they have even satisfied the conditions required in order to sign a Continuum of Care grant agreement. *See* 24 C.F.R. § 578.21(b) ("Conditions must be satisfied before HUD will execute a grant agreement with the applicant."); *see also id.* § 578.23(a) (providing that a grant agreement will be executed within 45 days from "the date when all conditions are satisfied"). Plaintiffs merely speculate that any delay they might experience regarding grant funding must be attributable to the rescinded OMB Memo. This is inadequate to justify preliminary injunctive relief as to these circumstances. *See Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (to demonstrate irreparable harm, plaintiffs must show "that the alleged harm will directly result from the action which the movant seeks to enjoin"). It also underscores again that Plaintiffs seek to improperly use this lawsuit against OMB to superintend the Executive Branch's countless funding decisions—which they appear to simply

assume are a consequence of the rescinded OMB Memo and subject to motions practice in this case.

## CONCLUSION

Plaintiffs' motion to clarify the scope of preliminary injunction should be denied.

Dated: March 7, 2025                              Respectfully Submitted,

                                                  YAAKOV M. ROTH
                                                  Acting Assistant Attorney General

                                                  ALEXANDER K. HAAS
                                                  Director

                                                  DANIEL SCHWEI
                                                  Special Counsel

                                                  */s/   Andrew F. Freidah*
                                                  ANDREW F. FREIDAH
                                                  EITAN R. SIRKOVICH
                                                  Trial Attorneys
                                                  United States Department of Justice
                                                  Civil Division, Federal Programs Branch
                                                  1100 L Street NW
                                                  Washington, DC 20530
                                                  Tel.:     (202) 305-0879
                                                  Fax:      (202) 616-8470
                                                  Email:    andrew.f.freidah@usdoj.gov

                                                  *Counsel for Defendants*