# EXHIBIT W

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL COUNCIL OF NONPROFITS, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> OFFICE OF MANAGEMENT AND BUDGET, et al., <br><br> *Defendants*. | Case No. 25-cv-239 |

## DECLARATION OF ANN MARIE OLIVA

I, Ann Marie Oliva, declare as follows:

1. I am the CEO of the National Alliance to End Homelessness, a public education, advocacy, and capacity building organization dedicated to ending homelessness in the United States. I submit this declaration, however, in my personal capacity, and not on behalf of NAEH.

2. I previously spent ten years working at the U.S. Department of Housing and Urban Development, where I served as the Director of the Office of Special Needs Assistance Programs and the Deputy Assistant Secretary for Special Needs. During my time at HUD, I was the lead career staff that administered the Continuum of Care grant program.

3. In my experience, HUD issues notice of funding opportunities—known as NOFOs—for CoC grants only where the money has already been appropriated by

1

Congress. Grant applications generally closed in the summer or fall, and HUD will spend the last several months of the calendar year reviewing grants.

4. This review differs for renewals and new projects. For renewals, HUD staff confirms that the applicant is in compliance with grant terms. In other words, when a renewal award is announced, there has already been a HUD determination that the applicant is in compliance. New projects undergo a more rigorous review, based on the requirements outlined in the NOFO.

5. Typically, around the end of December (although this year, it was January 17), HUD announces awards through a press release, identifying every individual project that has received funding.

6. After the awards are announced on the website, the next step is for HUD to issue individual award letters to each recipient. This usually takes about two to three weeks. This is a purely ministerial process—essentially a mail-merge function. During the gap between announcing the awards and sending out the award letters, there is no additional application review or reconsideration of the awards.

7. It is possible that HUD could simply make an error in the announcement, and need to make a technical correction to the awards list. For example, there might be a typographical error or transposed number in the awards list. Over my ten years at HUD, we occasionally had to rescind a grant after realizing that there had been a mistake in the date and the grant was not actually eligible for renewal that year. But this is very rare: I had to rescind grants only a handful of times across the approximately 60,000 grants I awarded during my tenure. The

protocols in place governing decisions to rescind an awarded grant do not include further review of the grant application after the award had been announced. In fact, we typically would set aside funding each year just in case a mistake had been made so that mistake would not result in knocking out a grantee where an award had been announced.

8. After a grant award letter is sent, the next step differs slightly for renewals and new grants. New projects go to a "technical submission" phase, where they must submit more detailed documentation. Renewal projects, however, usually do not have additional conditions that need to be met, because their compliance was already reviewed before the renewal was even awarded. Thus, for renewals, the next substantive step after an award letter has been sent is for the local HUD field office and the grantee to sign a grant agreement. Again, the process of signing a grant agreement is fairly ministerial: it is not a negotiation about the amount awarded or the fact of the award itself. Sometimes there are technical steps, such as asking the grantee to correct something in their application, or laying out the conditions of the grant. For example, HUD might use this process to clarify whether the grantee's request in a renewal application to move funds from one line item to another was a one-time request, or a request to move those funds in perpetuity for future renewals. But, again, this process is not intended to afford HUD a process to revisit its decision to award the grant. Awarded renewals almost never fall through after the award is announced.

9. This is, in part, because the CoC competition is conducted in a very rigorous way in the first place. HUD operates under a law called the HUD Reform Act, which places significantly more strictures on HUD's grant competitions than many other agencies. Because these rules are so strict, HUD's homeless grant competition seems to me a particularly unlikely place to find systemic or widespread fraud, as it already operates under a microscope.

10. When a recipient of a grant renewal has received their award letter, HUD considers the grant obligated under HUD's Funds Control Plan/Matrix. This is critically important for grantees, because sometimes due to technical delays, grant agreements may not be finalized before the old grant expires, causing cash flow concerns to the grant recipient. Because the grant award letter obligates the funds, this enables a grantee to get a line of credit against the award at a bank if necessary, to ensure there is no gap in resources.

11. It is my understanding that the award letters from the January 17 award announcement have not yet gone out. That is very atypical, and is making people in the community of those serving people who are homeless very worried. I know that CoC grant recipients rely on these funds in planning their budget for the year, making hiring decisions, and projecting the number of people their community can serve. A disruption in that planning carries immediate, devastating consequences. If this funding remains frozen, shelters will close, and people will be left with nowhere to turn.

12.     Freezing distribution of the award letters and Fiscal Year 2024 grant agreements (and, as I understand, grant agreements for Fiscal Year 2023) is keeping the award recipients on hold, indefinitely. But the funds have already been awarded: sending the letters does not reflect any further deliberative process from HUD. It is just an administrative step, albeit with significant consequences for awardees.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 9, 2025.

*[signature]*
Ann Marie Oliva