UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL COUNCIL OF NONPROFITS, et al., <br><br> *Plaintiffs,* <br><br> v. <br><br> OFFICE OF MANAGEMENT AND BUDGET, et al., <br><br> *Defendants.* | Case No. 25-cv-239 |

## JOINT STATUS REPORT

Pursuant to this Court's Order, Dkt. No. 61, the parties have met and conferred regarding a proposed briefing schedule. Prior to the Court's Order, Defendants approached Plaintiffs to solicit their position on a forthcoming motion to stay further proceedings in this case pending the resolution of Defendants' ongoing appeal of the Court's preliminary injunction to the United States Court of Appeals for the District of Columbia Circuit, *see* Dkt. Nos. 51, 52, 62; however, after the Court ordered this status report, and because any stay would necessarily affect any proposed briefing schedule, the parties agreed it would be most efficient to address their positions on a stay in this status report rather than through additional motions practice. Defendants reserve the right to make such a motion should the Court determine that this status report is not the appropriate vehicle for disposing of the stay issue.

The parties disagree as to whether the Court should stay proceedings pending resolution of the appeal of the preliminary injunction, as discussed further below. In

1

the event the Court is inclined to deny the requested stay, then the parties agree it would be appropriate for the Court to enter a schedule for Defendants to produce the administrative record and for the parties to file cross-motions for summary judgment. The parties disagree, however, on the timing for production of the administrative record and summary judgment briefing, as set forth below.

## DEFENDANTS' POSITION

### *Stay of Proceedings Pending Appeal*

Defendants respectfully request that the Court stay further proceedings in this case pending the resolution of Defendants' ongoing appeal of the Court's preliminary injunction to the D.C. Circuit. The interests of judicial economy support a stay of these proceedings to allow the parties and this Court to have the benefit of whatever ruling is issued by the D.C. Circuit. The D.C. Circuit is likely to rule on Plaintiffs' likelihood of success on the merits of their claims and provide guidance on the governing legal framework in relatively short order. While that appeal is ongoing, Plaintiffs continue to have the benefit of this Court's injunction such that there is no longer any urgency requiring expeditious litigation of their claims. This Court's injunction already provides all the relief the Plaintiffs are seeking, so there is no longer any plausible basis for claiming imminent or ongoing irreparable harm to Plaintiffs and their members.

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings

is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). Thus, "a trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Canady v. Erbe Elektromedizin GmbH,* 271 F. Supp. 2d 64, 74 (D.D.C. 2002) (modifications omitted, quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979)).

Courts within this District routinely stay proceedings where resolution of an appeal in the same or a similar matter may guide the district court in deciding the issues before it. *See, e.g., Univ. of Colo. Health Mem'l Hosp. v. Burwell*, No. 14-cv-1220, 2017 WL 535246, at *12 (D.D.C. Feb. 9, 2017) ("Because many of the applicable issues may be resolved by the D.C. Circuit, and because the D.C. Circuit may otherwise provide instruction on the issues here, the Court finds a stay would serve the interests of judicial efficiency."); *Allina Health Servs. v. Sebelius*, 756 F. Supp. 2d 61, 71 (D.D.C. 2010) (finding "good cause to stay this matter" given that "the parties agree that the resolution of [a related case] by the D.C. Circuit will be dispositive of the Plaintiffs' arguments here"); *Tax Analysts & Advocates v. IRS*, 405 F. Supp. 1065, 1067 (D.D.C. 1975) (staying proceedings because "the Supreme Court could, in effect, overrule [a relevant precedent] should it choose to grant the petition for certiorari"); *cf. Sumler v. Sovran Bank/DC Nat'l*, No. 91-cv-3276, 1992 WL 315975, at *4 (D.D.C. Oct. 14, 1992) (inviting the parties to request a stay because "it may be in the interest

of judicial economy to stay these proceedings pending the Supreme Court's decision" in a related matter). As these courts have recognized, it makes eminent sense for a district court to refrain from deciding the very same issues that may soon be resolved by a binding appellate court.

Continuing proceedings at this juncture would unnecessarily waste the Court's and the parties' resources. Given that many (if not all) of the critical legal issues presented in Plaintiffs' complaint are now before the D.C. Circuit, it makes little sense for this Court (and the parties) to expend the resources necessary for further litigation of those issues at this time. Because the preliminary injunction standard will require the D.C. Circuit to consider whether Plaintiffs are "likely to succeed on the merits," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), it would be far more efficient for the parties to await a decision from the D.C. Circuit, at which point most (if not all) of the legal issues may then have definitive resolution and further briefing and consideration of any remaining legal issues will be better informed by having the benefit of the D.C. Circuit's analysis. And while Plaintiffs argue that the Court should continue proceedings because if it enters final judgment then the appeal may become moot, *see infra* at 8, the practical consequence of this would effectively deprive Defendants of the opportunity to obtain appellate review of the preliminary injunction, and instead require the appeal to start all over after final judgment. Thus, continuing proceedings would not only frustrate judicial economy in this Court but in the appellate court as well. Accordingly, a stay would best "serve the interests of judicial efficiency," *Univ. of Colo. Health Mem'l Hosp*, No. 14-cv-1220,

2017 WL 535246, at *12, and simplify the issues and questions of law the Court will need to confront.

In contrast to the significant waste of resources that will occur if this case proceeds, Plaintiffs will not suffer any harm from a stay. The preliminary injunction remains in effect while the appeal is litigated, thus there is no basis for concern about any continuing harms allegedly stemming from the challenged actions in this case. In this regard, Plaintiffs are not situated like the Plaintiffs in *Asylumworks v. Mayorkas*, No. 20-cv-3815, 2021 WL 2227335 (D.D.C. 2021), who were not under the protection of a preliminary injunction, thus a stay would have imposed tangible hardship upon them due to the alleged harms stemming from the Government's actions. Notwithstanding this fact, Plaintiffs suggest that a stay would "'work damage' to [them]" because it would delay the development of a factual record. *Infra* at 11 (quoting *Landis*, 299 U.S. at 255). But this circular logic—that a stay of proceedings harms them because it stays the record development proceedings—does not state a distinct harm particular to the positions of the parties in this case and depends on the questionable proposition that delayed access to record evidence, untied to any pressing need for that evidence, is somehow prejudicial. *See In re Papst Licensing GmbH & Co. KG Pat. Litig.*, 320 F. Supp. 3d 132, 139 (D.D.C. 2018) ("a 'generalized claim' that 'memories will fade and discovery may likely be lost' carries 'little weight' in the absence of 'any showing as to particular evidence or discovery that is at risk of being lost.'" (quoting *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058-WCB, 2015 WL 1069111 (E.D. Tex. 2015))). Furthermore, there is no basis to

fear that delaying compilation of the record in this case would reduce its quality. *See infra* at 10.

As this case arises under the Administrative Procedure Act ("APA"), review is typically limited to the agency's administrative record, which is documentary in nature. 5 U.S.C. § 706; *see Common Sense Salmon Recovery v. Evans*, 217 F. Supp. 2d 17, 20 (D.D.C. 2002) (there is a "basic rule that generally discovery is not permitted in Administrative Procedure Act cases because a court's review of an agency's decision is confined to the administrative record"). Plaintiffs believe, however, that discovery outside the administrative record may be needed here nonetheless. *See* infra at 11. This departure from the standard course of APA litigation only further underscores how continued merits proceedings in this case are likely to be burdensome. At a minimum, the parties would need to litigate—and the Court would need to resolve—any dispute about the propriety of discovery. And in the event that discovery is granted, there may well be privilege disputes and other issues that require substantial expenditure of the Court's and the parties' time and resources. All of those things can and should be avoided while a potentially dispositive appeal is pending.

The Court should therefore grant a stay of these proceedings because it is the most efficient course for the Court and the parties, and neither party will be prejudiced by a stay.

### *Briefing Schedule*

Should the court deny Defendants' stay request, Defendants respectfully submit the following briefing schedule for the Court's consideration.

First, Defendants respectfully request 30 days to produce the administrative record. Plaintiffs' proposal that the administrative record be produced by May 14 fails to provide the Court with a meaningful opportunity even to rule on Defendants' stay request, which the parties agreed to submit in connection with this May 9 filing. Moreover, if a broader stay of proceedings is denied, Plaintiffs do not identify any cognizable prejudice stemming from receiving the administrative record in mid-June as opposed to mid-May. Although Defendants previously proposed that May 14 deadline, *see* ECF No. 55 at 6, that was before Defendants noticed their appeal of the preliminary injunction, ECF No. 62, before the parties agreed to submit this stay request to the Court for resolution, and also before the National Council of Nonprofits (and others) filed a new case against OMB (and other agencies) in the District of Rhode Island raising similar claims and seeking still more emergency relief, *see Woonasquatucket River Watershed Council v. USDA*, No. 1:25-cv-97 (D.R.I), which has required a significant expenditure of time and attention to litigate. Thus, allowing 30 days for production of the administrative record is a reasonable approach that would not prejudice the Plaintiffs. But at a minimum, Defendants respectfully request 14 days to produce the administrative record rather than the handful of business days that Plaintiffs' proposed deadline of May 14 would afford.

Defendants further propose that Plaintiffs move for summary judgment 30 days after the administrative record is produced; Defendants submit a combined opposition and cross-motion for summary judgment 30 days later; Plaintiffs file a combined opposition and reply 21 days later; Defendants file a reply 21 days later;

7

and the Court holds a hearing on the cross-motions on a date most convenient to it following submission of Defendants' reply.

## PLAINTIFFS' POSITION

### *Stay of Proceedings Pending Appeal*

Plaintiffs contacted Defendants on April 22 concerning when and in what format Defendants intended to produce the administrative record—the normal next step in an APA challenge such as this one. Defendants responded two days later informing Plaintiffs that they would notice an appeal and seek a stay of proceedings in this Court.

Plaintiffs oppose a stay. To begin, there appears to be no dispute that Defendants' appeal "does not divest [this C]ourt with jurisdiction to proceed with a decision on the merits." *Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 937 F. Supp. 2d 18, 26 (D.D.C. 2013). The Court should do so here.

The discretionary choice whether to stay proceedings "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). Where "there is even a fair possibility that the stay . . . will work damage to some one else," the movant "must make out a clear case of hardship or inequity in being required to go forward" before a court will stay proceedings. *Id.* at 255; *see also, e.g.*, *Asylumworks v. Mayorkas*, No. 20-cv-3815, 2021 WL 2227335, at *6 (D.D.C. June 1, 2021) (citing *Landis* and denying stay where "defendants fail[ed] to show that, absent a stay, the agency would suffer any hardship, save for the expenditure of resources in proceeding with the litigation");

8

*Ctr. for Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 21 (D.D.C. 2019) (citing *Landis*, denying stay, and noting government's concession that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity'"); *Nat'l Indus. for Blind v. Dep't of Veterans Affs.*, 296 F. Supp. 3d 131, 140 (D.D.C. 2017) (citing *Landis*, denying stay, and emphasizing that "the burden of demonstrating a hardship that warrants staying properly filed legal proceedings *is on the movant*") (K.B. Jackson, J.).

Here, a stay would undermine, not promote, judicial efficiency and the expeditious resolution of this case, including because it would pointlessly postpone final judgment until 2026 at the earliest. A stay also threatens to "work damage to" Plaintiffs because it would defer compilation of the administrative record—and the completion of any necessary discovery should the record be insufficient—into next year, by which point memories will have faded, staff may have changed, and documents may be lost. Nor will Defendants be prejudiced if this case moves forward, much less face a "clear case of hardship or inequity," as required in order to justify a stay. *See Landis*, 299 U.S. at 255.

First, efficiency and judicial economy favor allowing this litigation to proceed. Few steps should remain to bring this case to final judgment. Defendants must produce the administrative record, which will likely not be burdensome given the speed with which the decision at issue in this case was made. If the record is sufficient and complete—something that is entirely within the government's control and should not be difficult to ensure—the parties can then proceed to filing cross-motions for

9

summary judgment (motions that presumably will focus on issues the parties have briefed, and the Court has considered, twice already). There is no apparent reason the case could not reach final judgment before the preliminary injunction appeal is even decided, thus mooting that proceeding and allowing the D.C. Circuit to decide any future appeals at one go and on a complete record. Defendants' proposal for extended two-step litigation—in which the parties and judiciary must devote a year or more to litigating Plaintiffs' "likelihood" of prevailing before this Court can decide whether Plaintiffs actually prevail—makes little sense and cannot be justified on efficiency grounds.

Second, there is, at minimum, "a fair possibility that the stay . . . will work damage to some one else." *See Landis*, 299 U.S. at 255. That is because Defendants seek to postpone their obligation to produce the administrative record or any other needed factual material for perhaps an additional year or more. That would "work damage" to Plaintiffs not only by needlessly delaying their access to that information but by materially increasing the risk that the same information will no longer be available when Defendants finally turn to assembling and producing the administrative record sometime in 2026. This risk is heightened given that the administrative proceedings here did not take place in the ordinary course and accordingly, the record will require assembly by staff with actual knowledge of the decisionmaking process at issue and, in particular, what materials were before then-Acting Director Vaeth and any other relevant agency decisionmakers and what consideration they gave to the obvious harmful consequences of their actions.

10

Defendants' bare assertion that "there is no basis to fear" that the passage of a year or more before they even begin assembling the administrative record is cold comfort and overlooks that, under controlling law, the Court must ask whether there is "a fair possibility"—not a mathematical certainty—that the stay could harm Plaintiffs. *See Landis*, 299 U.S. at 255. And the possibility of prejudice to Plaintiffs would grow greater still in the event the record is incomplete or otherwise in need of supplementation through discovery, given that "[u]nnecessary delay inherently increases the risk that witnesses' memories will fade and evidence will become stale." *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002).

Because there is at minimum a "fair possibility" that a stay would "work damage" to Plaintiffs, the government bears the burden in seeking the stay to "make out a clear case of hardship or inequity in being required to go forward." *Id.* at 255. The government fails to do so. The only harm it even suggests is that it may have to "waste [its] resources" continuing to litigate in this Court. But it is well established that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.'" *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 21; *see also Asylumworks*, 2021 WL 2227335, at *6. And even if ordinary litigation costs *were* relevant, Defendants have not shown that seeing this case through to final judgment at this point would be particularly difficult or impose any special burden. Defendants fret that ordinary discovery would be burdensome, but discovery is likely in this case only if the Court determines that Defendants have failed to assemble a record sufficient for it to resolve the parties' cross-motions for summary judgement—a

11

possibility that becomes more likely the more time passes.

The Court therefore should decline to stay proceedings. In the alternative, if the Court is inclined to stay proceedings, it should do so only after the parties have finished assembling the record, including completing any necessary discovery.

## *Briefing Schedule*

Plaintiffs respectfully submit that the Court should require the government to produce the administrative record to Plaintiffs by May 14, the same date it is required to file a certified list of the contents of the administrative record with the Court. *See* LCvR 7(n)(1). Defendants have already had significant time to assemble the record. And because they are already required to file the certified list of contents by that date (and have been on notice of that obligation at least since the Court's minute order of March 14, setting the deadline for Defendants to file their answer), it will impose no additional burden for them to produce the record itself. Nor are Plaintiffs challenging the kind of substantial legislative rulemaking that might involve assembling years of relevant material; there is no reason to expect the administrative record here to be particularly difficult to compile. Plaintiffs have previously sought a deadline for the production of the record, *see* ECF No. 55, at 2, and Defendants to date have provided no reason why they should not be required to produce those materials.

To the contrary, Defendants themselves previously requested that deadlines regarding the administrative record be "governed by the default timing provisions of Local Civil Rule 7(n)(1)." *Id.* at 6. Having taken that position in response to Plaintiffs'

12

request that they produce the record by March 25, *id.* at 2, Defendants should not be allowed to push back the goal posts further still. The excuses they now cite—that they have noticed an appeal, have chosen to wait until the eve of the deadline they themselves requested before asking for an extension (without explaining any need for the extension), and are involved in another case concerning some of their other unlawful conduct—provide no basis for again delaying a straightforward and entirely ordinary obligation that the government should expect in any APA case.

Following receipt of the administrative record, Plaintiffs respectfully request that the Court allow 14 days for Plaintiffs to assess the adequacy of the record and the need for any additional discovery. Should discovery be unnecessary, Plaintiffs agree that a summary judgment schedule roughly similar to the one Defendants have proposed would be appropriate—i.e., Plaintiffs' opening motion to be due 30 days after any issues concerning the administrative record have been resolved; Defendants' combined response and cross-motion due 30 days later; Plaintiffs' combined reply and response due 21 days later; and Defendants' reply due 14 days after that.

Dated: May 9, 2025

Respectfully Submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director

DANIEL SCHWEI
Special Counsel

*/s/   Eitan R. Sirkovich*

13

        EITAN R. SIRKOVICH (D.C. Bar No. 90030102)
ANDREW F. FREIDAH
Trial Attorneys
United States Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel.:     (202) 353-5525
Email:   eitan.r.sirkovich@usdoj.gov

*Counsel for Defendants*


/s/ *Kevin E. Friedl*
Kevin E. Friedl* (DC Bar No. 90033814)
Jessica Anne Morton (DC Bar No. 1032316)
Robin F. Thurston (DC Bar No. 1531399)
Skye L. Perryman (DC Bar No. 984573)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
kfriedl@democracyforward.org
jmorton@democracyforward.org
rthurston@democracyforward.org.
sperryman@democracyforward.org

*admitted *pro hac vice*

14